1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
                    **WESTERN DISTRICT OF WASHINGTON**
9                            **AT SEATTLE**

10
ROBERT MELTON, JR and LORI
11   MELTON, husband and wife and the
marital community thereof,                    CASE NO. C09-0233-JCC
12
                    Plaintiffs,
13
         v.                                    ORDER
14
CITY OF BURLINGTON, a Washington
15   municipal corporation, SKAGIT 911
EMERGENCY COMMUNICATIONS, a
16   Washington municipal corporation, ERIC
YOUNGQUIST, and STACY WILSON,
17
                    Defendants.
18

19          This matter comes before the Court on Defendant City of Burlington, Youngquist, and

20   Wilson's Motion for Summary Judgment (Dkt. No. 14),[1] Plaintiffs' Response (Dkt. No. 17), and

21   Defendants' Reply (Dkt. No. 19). Having thoroughly considered the parties' briefing and the

22   relevant record, the Court hereby GRANTS Defendants' motion for the reasons that follow.

23   _____

24   [1]Skagit 911 Emergency Communications is the only defendant that did not join in the motion.

25

ORDER — 1

## I.    BACKGROUND

This case arises from the brief stop and arrest of Plaintiff Robert Melton by Burlington police officers Eric Youngquist and Stacy Wilson. Robert and Lori Melton bring a claim under 42 U.S.C. § 1983, alleging that the officers violated Robert Melton's civil rights when they briefly detained him based on reports that the vehicle he was driving was stolen.[2]

On November 5, 2004, two women, Jessica Rainwater and Tessa Halterman, called Skagit 911 Emergency Communications ("Skagit 911") to report they were following a black Honda Civic, license plate number 281-PFG, that they believed had been stolen from their friend, Brynn Riggins. (911 Audio (Dkt. No. 16).)[3] The emergency call was answered by Skagit 911 employee Thomas Burris, who was in communication with Halterman throughout the incident. (Burris Dep. 6:20–23 (Dkt. No. 15 at 18).) A second Skagit 911 employee, Krista Gottschalk, worked the call as a dispatcher, in tandem with Burris. (*Id.*) While Burris was speaking with Halterman, Gottschalk simultaneously dispatched and communicated with the Burlington police officers. (*Id.* 6:24–7:5, 16:5–9.) Meanwhile, Halterman and Rainwater continued to follow the suspected stolen vehicle, providing ongoing updates about its location. (911 Audio (Dkt. No. 16).) Within about six minutes of being dispatched, the responding officers were able to locate the suspect vehicle. (*Id.*)

The first officers to respond to the dispatch were defendant officers Wilson and Youngquist. (Youngquist Dep. 3, 7 (Dkt. No. 18 at 15–16).) A third officer, Officer Rogge, responded shortly thereafter and arrived on the scene in time to help make the arrest. (Wilson Dep. 6 (Dkt. No. 18 at 26).) Wilson and Youngquist located the suspect vehicle and decided to engage a felony stop. (Youngquist Dep. 7–8 (Dkt. No. 18 at 16–17).) Based on the information provided by dispatch, both

---

[2] Although this action is brought by both Robert and Lori Melton, the Court will refer to Robert Melton as "Plaintiff" for ease of reference.

[3] All of the relevant phone and radio communications relating to this incident are contained in two audio CDs that have been filed with the Court. (*See* 911 Audio (Dkt. No. 16); Smith Decl., Exs. 1, 2 (Dkt. No. 15 at 4–7).) The Court has thoroughly reviewed the CDs, and neither party disputes their authenticity or accuracy.

officers believed the vehicle to be stolen at the time. (*Id.* 12:24–14:12; Wilson Dep. 17 (Dkt. No. 15 at 30).) They identified a safe place to pull the vehicle over and approached the car with their weapons drawn. (Wilson Dep. 11–14 (Dkt. No. 15 at 26–29).) They then ordered the driver, Plaintiff Robert Melton, out of the car and onto the ground and handcuffed him. (*Id.*) Plaintiff was compliant throughout the stop and detention. (*Id.*) The officers detained Plaintiff for approximately five or six minutes before determining that the vehicle was not stolen. (Youngquist Dep. 28 (Dkt. No. 15 at 47).) Upon learning that Plaintiff was the registered owner of the black Honda Civic, license number 281–PFG, the officers immediately released him. (*Id.*)

The confusion leading to the arrest was caused by a second vehicle, which was stolen, that had a very similar license plate number: 281–PZG. When Gottschalk ran a search for license number 281–PFG on her computer, the search yielded not only information about the vehicle belonging to Robert and Lori Melton, but also returned a hit for a "sound-alike" vehicle—a white Honda Civic with the license number 281–PZG that had been reported stolen. (Gottschalk Dep. 14:15–16:24 (Dkt. No. 15 at 11); Wilson Dep. 26 (Dkt. No. 15 at 33).) The confusion was not cleared up until shortly after Plaintiff had been arrested.

The relevant phone and radio communications leading to Plaintiff's arrest are preserved as audio recordings, establishing a record and a timeline of the incident. Below, are excerpts from the phone conversation between Halterman (the "reporting party") and Burris (the "call taker"), as well as the radio communications between Gottschalk (the "dispatcher") and the officers. These two different audio recordings are spliced together to create a narrative of the timeline of the events.[4] The officers did not communicate directly with the reporting party, and the only information available to them regarding the description and location of the suspect vehicle was relayed by

---

[4] Some of the less pertinent dialogue has been omitted.

Gottschalk, the Skagit 911 dispatcher. (*See* Wilson Dep. 17:21–18:8 (Dkt. No. 15 at 30–31).)

Accordingly, their decision to stop the vehicle and arrest Plaintiff was based exclusively on that information, which is emphasized in bold below.

| | |
|---|---|
| Halterman to Burris: | Hi, my friend's car got stolen about two weeks ago and I'm following her stolen car right now. |

. . .

| | |
|---|---|
| Burris to Halterman: | Alright. Are you still on Highway 20? . . . Are you heading into Burlington right now? |
| Halterman to Burris: | Yes we are. |
| Burris to Halterman: | Can I have a description of the vehicle please? |
| Halterman to Burris: | It's a black Honda Civic. It's a '92. It's a two-door. License plate number 281–CFG. |
| Burris to Halterman: | 281–CFG? |
| Halterman to Burris: | PFG, like pig. It's black, no spoiler. It has clear taillights. |

**6:37:48 p.m.**

| | |
|---|---|
| Gottschalk to Officers: | **Recovered vehicle. SR 20 westbound into the city limits. Reporting party is following a black 1992 Honda Civic, license 281–PFG. Reporting is calling a friend to confirm that it is a stolen vehicle.** |

. . .

**6:39:12 p.m.**

| | |
|---|---|
| Youngquist: | **I'll be en-route to stolen, update on position.** |

. . .

| | |
|---|---|
| Burris to Halterman: | Okay. How many people are in the vehicle that you are following? |
| Halterman to Burris: | I believe two from what I can see. I can see two heads and they look like white guys from what I can see, but I really can't see a lot. Yes, two people. One of them, the driver, looks like a male. We called a friend to verify the license plate number. She's in Wenatchee right now but she called her mom and she said that was her license plate. |

| | | |
|---|---|---|
| Gottschalk to Officers: | **Vehicle now passing Seventh Day Church. Reporting party is following in a green Honda Civic two-door.** |
| Burris to Halterman: | 281–PFG? |
| Halterman to Burris: | Yeah. |
| Burris to Halterman: | And stolen out of Wenatchee? |
| Youngquist to Gottschalk: | **Description of stolen and have you been able to confirm it?** |
| Halterman to Burris: | No, it was stolen out of– |
| Gottschalk to Officers: | **I believe the call taker is confirming that it was stolen out of Wenatchee. Running the plate now. It's 281–PFG.** |
| Burris to Halterman: | Okay. Where are you passing right now? |
| . . . | |
| Halterman to Burris: | We're on Fairhaven. |
| . . . | |

**6:41:19 p.m.**

| | | |
|---|---|---|
| Gottschalk to Officers: | **The vehicle is now turning onto Fairhaven. I've run the plate on the vehicle, it comes back to a Robert and Lori Melton. Unsure if that is the correct plate, it could be 281–PZG.** |
| Burris to Halterman: | Okay. I'm not getting a stolen hit on that license plate, so that is what I'm trying to find out before I have the vehicle stopped. Let me make sure that is 281–PFG (Paul Frank George). |
| Halterman to Burris: | Yes. |
| Youngquist to Gottschalk: | **Received. We are out on Fairhaven. Suspect vehicle description?** |
| Gottschalk to Officers: | **Suspect vehicle is a black 1992 Honda Civic. Check and advise of exact location now.** |
| . . . | |
| Burris to Halterman: | That license plate is not stolen right now . . . . |
| Halterman to Burris: | He says that car is not stolen. |
| Rainwater to Halterman: | What? It is totally her car for sure. |

| | | |
|---|---|---|
| Burris to Halterman: | | What is her name? |
| Halterman to Burris: | | Her name is Brynn Riggins. |
| Burris to Halterman: | | Where did she report it stolen from? |
| Halterman to Burris: | | Sedro-Woolley, Washington. |
| Burris to Halterman: | | What street did that vehicle just turn down? |
| Halterman to Burris: | | Spruce Street, and now we are following it into Fred Meyer to the skating rink area. (Side cell phone conversation in Halterman vehicle: "Brynn, are you sure that is the license plate, because we are on the phone with the police and they are saying that it is not a stolen car. Are you sure that is your license plate?") |

. . .

**6:42:49 p.m.**

| | |
|---|---|
| Gottschalk to Officers: | **The vehicle is now at the Skagit Skate Park.** |
| Wilson to Gottschalk: | **The skate park or the skating rink?** |
| Rainwater on cell/Burris: | (Side cell phone conversation in Halterman vehicle: "That's not your car? That is not your license plate number?") |
| Gottschalk to Officers: | **That would be the skating rink and license 281–PZG does return stolen out of PD Seattle.** |

. . .

| | |
|---|---|
| Wilson to Gottschalk: | **I will be behind that vehicle northbound on Spruce near the fire station.** |
| Halterman to Burris: | There's a cop following them. He just pulled them over. |
| Gottschalk to Officers: | **Copy, northbound on Spruce near fire station.** |
| Rogge to Officers: | **I'm Fairhaven and Spruce, where do you want to stop it?** |

**6:44:15 p.m.**

| | |
|---|---|
| Wilson to Rogge: | **If you could come– we are ordering him out right now . . . . If there is a way you can stop traffic coming southbound.** |
| Rogge to Wilson: | **Received.** |

**6:45:33 p.m.**

| | |
|---|---|
| Rogge to Gottschalk: | **Right, we are out with the vehicle, felony stop Spruce between Sharon and Cedar.** |

**6:48:27 p.m.**

| | |
|---|---|
| Youngquist to Gottschalk: | **One in custody, status 4.** |
| Gottschalk to Officers: | **One in custody.** |
| Rogge to Gottschalk: | **One to run. Last of Melton. First of Robert, S., 9/4/59.** |

**6:49:09 p.m.**

| | |
|---|---|
| Youngquist to Gottschalk: | **Where is the reporting now?** |
| Gottschalk to Officers: | **Reporting party is a Tessa Halterman. I have a cell phone.** |
| Youngquist to Gottschalk: | **Received. Confirming that the registration that is stolen is 281–PFG?** |
| Gottschalk to Youngquist: | **Negative, 281–PZG.** |
| Rogge to Gottschalk: | **Received. Go ahead and run PFG and give me a read back.** |
| Gottschalk to Officers: | **PFG returns to a black 1996 Honda Civic to a Robert Melton and Lori Melton of Brickyard Blvd., Sedro Woolley.** |

**6:51:50 p.m.**

| | |
|---|---|
| Gottschalk to Officers: | **Drivers' on Melton.** |
| Rogge to Gottschalk: | **Go ahead.** |
| Gottschalk to Officers: | **Returns clear and current. Also, the license plate 281–PZG is confirmed stolen out of Seattle.** |
| Rogge to Gottschalk: | **Which one's confirmed?** |
| Gottschalk to Officers: | **License 281–PZG, on a white 1992 Honda Civic is confirmed stolen out of Seattle.** |

(911 Audio (Dkt. No. 16); Mot. 3–10 (Dkt. No. 14).)

Plaintiff filed his original complaint in Skagit County Superior Court, alleging several state-law based causes of action. (Removal 1 (Dkt. No. 1).) After a number of hearings, the Superior Court dismissed all of Plaintiff's state law claims, but granted leave to amend his complaint. (*Id.* at 1–2.) The Second Amended Complaint asserts a 42 U.S.C. § 1983 claim, alleging that Defendants violated Plaintiff's right to be free from unreasonable search and seizure. (2d Am. Compl. ¶¶ 14–19 (Dkt. No. 1 at 11–12).) In February 2009, Defendants removed the action to this Court, and have now moved for summary judgment.

## II.       APPLICABLE STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Id.* at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III.    ANALYSIS

Plaintiff's surviving claim is brought pursuant to 42 U.S.C. § 1983,[5] which provides a private right of action against police officers who, acting under color of state law, violate federal constitutional rights. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001). Plaintiff contends that the defendant officers violated his Fourth Amendment rights by arresting him without probable cause. (Resp. 2 (Dkt. No. 17).) Plaintiff asserts that his arrest was unreasonable because Officers Wilson and Youngquist lacked probable cause to believe that he was driving a stolen vehicle. (*Id.* at 10–11.) Defendants move for summary judgment dismissal, arguing that the officers had probable cause to arrest Plaintiff, and even if they did not, they are nonetheless entitled to qualified immunity. (Mot. 16–19 (Dkt. No. 14).)

### A.  Probable Cause

A warrantless arrest is reasonable under the Fourth Amendment where it is supported by probable cause. *Brinegar v. United States*, 338 U.S. 160, 164, 175 (1949). Thus, the existence of probable cause is a complete defense to a § 1983 claim based on an alleged unlawful arrest. *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966) ("[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established."). Under federal law, "[p]robable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar*, 338 U.S. at 175–76 (*quoting Carroll v. United* States, 267 U.S. 132, 162 (1925). Stated differently, probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that

---

[5] Plaintiff's Second Amended Complaint appears to attempt to assert a state-law negligence claim as well. (*See* 2d Am. Compl. ¶¶ 7–13 (Dkt. No. 1 at 10–11).) However, because *all* of Plaintiff's state-law claims were dismissed in state court, (Resp. 2 (Dkt. No. 17)), the only surviving claim removed to federal court is his § 1983 claim.

1  [the arrestee] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).

2  Probable cause is an objective standard based upon the "totality of the circumstances" known to the

3  officers at the time of arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

4       Based on the facts and circumstances presented here, Officers Wilson and Youngquist had

5  probable cause to initially arrest Plaintiff. The officers' decision to stop and briefly detain Plaintiff

6  was based upon the information provided to them by Gottschalk, the dispatcher. Gottschalk

7  specifically told the officers that the suspect vehicle was a "black Honda Civic, license 281-PFG."

8  (911 Audio (Dkt. No. 16).) After receiving updates on the vehicle's location, Youngquist asked the

9  dispatcher to confirm the vehicle's description and its status. (*Id.*) Gottschalk replied that the "call

10  taker is confirming the vehicle is stolen" and its license plate is 281-PFG. (*Id.*) After running the

11  plate, the dispatcher told the officers that the plate was licensed to Robert and Lori Melton, but she

12  was "*unsure* if that is the correct plate, it *could* be 281-PZG." (*Id.*) (emphasis added). Once the

13  officers got close to the vehicle's reported location, Youngquist asked again, "Suspect vehicle

14  description?" (*Id.*) Gottschalk again confirmed, "Suspect vehicle is a black 1992 Honda Civic." (*Id.*)

15  Then, when the officers were just about to stop the vehicle, the dispatcher informed them that

16  "license 281-PZG *does return as stolen*." (*Id.*) (emphasis added). Shortly thereafter, the officers

17  stopped the black Honda Civic. (*Id.*) Given that the dispatcher repeatedly and consistently described

18  the suspect vehicle as a black Honda Civic whose license was 281-PFG but "could" be 281-PZG—

19  which was *confirmed as stolen*, the officers had reasonable grounds to believe the vehicle they

20  located was stolen. Moreover, the officers' knowledge that the reporting party was following the

21  suspect vehicle, providing details about its specific location, and confirming its stolen status, further

22  supported their belief that the vehicle was stolen.

23

24

25

The confusion that led to the officers' mistaken belief that the vehicle was stolen was caused by a lack of communication by the dispatcher. When Gottschalk initially ran the 281-P**F**G license plate through the computer system, no stolen vehicle report returned for that plate; instead, she received a "sound-alike stolen" report for a license 281-P**Z**G. (Gottschalk Dep. 14:15–19, 15:17–22 (Dkt. No. 15 at 12).) But Gottschalk *never* told the officers that license 281-PFG came back as not stolen. (*Id.* at 18:15–19:1.) Nor did she tell them that the confirmed stolen vehicle, license 281-PZG, was a *white* Honda Civic. (*See* 911 Audio (Dkt. No. 16).) Instead, when asked for a description of the suspected stolen vehicle, Gottschalk again confirmed that it was a *black* Honda Civic. (*Id.*) The revelation that the dispatcher had been relaying information regarding two different vehicles with different license plates, one reported as stolen and the other not stolen, did not occur until *after* Plaintiff had been stopped and arrested. (*See id.*) Based on the information relayed by the dispatcher prior to the arrest, the officers had reasonable grounds to believe that the black Honda Civic they located was stolen. *See Pringle*, 540 U.S. at 371 (defining probable cause as "a reasonable ground for belief of guilt" that is "particularized" to the person seized). In short, the deficiency in this case was one of communication, not probable cause.

After carefully reviewing the audio recordings, the Court is convinced that the information communicated to the officers provided probable cause to justify Plaintiff's initial arrest. "In some instances there may initially be probable cause justifying an arrest, but additional information obtained at the scene may indicate that there is less than a fair probability that the defendant has committed or is committing a crime." *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007). This is such a case. The information communicated by the dispatcher to the officers, during the six minutes they spent locating the vehicle, established a reasonable basis to conclude that the vehicle Plaintiff was driving was stolen. As soon as additional information revealed that the vehicle was not

stolen, the officers immediately released Plaintiff. Because Plaintiff's brief arrest was supported by probable cause, it was reasonable and permissible under the Fourth Amendment. Accordingly, Plaintiff's 42 U.S.C. § 1983 claim fails as a matter of law.[6]

## B. Qualified Immunity

Even if the officers somehow lacked probable cause, Plaintiff's § 1983 against them cannot succeed because they would be entitled to qualified immunity. Qualified immunity shields officers from a suit for damages if "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (internal quotation marks and citation omitted); *see also Malley v. Briggs*, 475 U.S. 335, 341(1986) (qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law"). For example, in *Hunter*, the Supreme Court found that two secret service agents possessed probable cause to arrest a suspect. 502 U.S. at 228. The Court further found that, even assuming the agents erred in concluding that probable cause existed, they were nevertheless entitled to qualified immunity because their decision was reasonable. *Id.* at 228–29.

Here, at the time the officers arrested Plaintiff, they possessed reasonable grounds to believe that the black Honda Civic was stolen. They had received confirmation of the specific description and location of the vehicle, as well as information indicating that the reporting party had confirmed the stolen status of the vehicle. Even assuming that the officers did not have probable cause to arrest

---

[6] Because Plaintiff has not suffered a constitutional deprivation, his § 1983 claim against Defendant City of Burlington also fails as a matter of law. The Court notes that Plaintiff has failed to allege any basis whatsoever for establishing municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Plaintiff, they would be entitled to qualified immunity because their decision was reasonable, albeit mistaken. *See id.* 227–29.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. No. 14) is hereby GRANTED. Because Plaintiff's sole claim under 42 U.S.C. § 1983 fails as a matter of law, this case is DISMISSED.

SO ORDERED this 29th day of July, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE